UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMALYA T.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 22-cv-02691-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 16 & 20 |

Plaintiff Normalya T. seeks judicial review of the Social Security Administration Commissioner's ("Commissioner") denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). Before the Court are Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment. ECF Nos. 16, 20. The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5. The Court will grant Plaintiff's motion and deny Defendant's motion.

**I.    BACKGROUND**

Plaintiff was born on April 10, 1993, and lives in Alameda County, California. *E.g.*, AR 943. Plaintiff completed high school and previously worked between 2013 and 2015 as a receptionist in the service industry, as a cashier at a restaurant, and as a stocker at a retail store. AR 312, 329–33. Plaintiff incurred post-traumatic stress disorder ("PTSD") as a result of suffering sexual abuse as a child by members of her family, finding her mother deceased in the bathroom of their home as a teenager, and suffering a violent attack by her then-partner on July 20, 2015. AR 350, 477, 575–77, 733, 883, 925. The attacker put Plaintiff in a chokehold and repeatedly punched and slapped Plaintiff in the face, and the attack sent Plaintiff to the emergency

room for treatment. AR 576–77. Plaintiff was homeless and staying at a women's shelter at the time of the attack, and she remained in the shelter until she found temporary housing on November 1, 2018, shortly before giving birth to her daughter. AR 576, 702, 921. Plaintiff has been diagnosed with PTSD, anxiety disorder, panic disorder, and major depressive disorder by numerous healthcare providers. *See generally* AR 539–82, 693–806, 810–83, 919–26, 943–1102, 1123–77, 1184–1433, 1435-1517, 1528–58. Plaintiff has also been diagnosed with bilateral de Quervain's tenosynovitis, migraine with aura, and asthma. *E.g.*, AR 911–12, 939–40, 959; *see* AR 1089, 1137, 1161, 1518.

Plaintiff filed an application for benefits under Title XVI of the Social Security Act on September 13, 2018. AR 260. She alleged an onset date of July 21, 2015—one day after she was attacked. AR 261. Her application was initially denied on December 28, 2018, AR 122–26, and again on reconsideration on April 16, 2019, AR 129–34. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), AR 140, who held a hearing and then issued a written decision denying Plaintiff's application on October 24, 2019, AR 108. Plaintiff requested review by the Appeals Council, which remanded the case to the ALJ for further proceedings in a written decision on May 5, 2021. AR 114–19. The Appeals Council concluded, *inter alia*, that the ALJ failed to give due consideration to the nature and severity of Plaintiff's de Quervain's tenosynovitis, to adequately consider the entire record in evaluating Plaintiff's subjective complaints, and to incorporate the medical consultant opinions she found persuasive. ECF No. 116 at 2.

Following a hearing on remand, AR 15, the ALJ once more denied Plaintiff's application on May 5, 2021, AR 12–34. In reaching this decision, the ALJ used the five-step sequential evaluation process for disability determinations required by SSA regulations. 20 C.F.R. § 416.920(a)(1). The ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity. AR 18; *see* 20 C.F.R. § 416.920(a)(4)(i). At the second step, the ALJ found that Plaintiff had multiple severe impairments: bilateral de Quervain's tenosynovitis, asthma, migraine with aura, anxiety with panic attacks, PTSD, major depressive disorder, and panic disorder without agoraphobia. AR 18; *see* 20 C.F.R. § 416.920(a)(4)(ii). At the third step, the ALJ found

1    that Plaintiff did not have an impairment that meets or medically equals the severity of one of the

2    impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, so proceeded to step four.  20 C.F.R.

3    § 416.920(a)(4)(iii); AR 19.  At the fourth step, the ALJ determined that Plaintiff had the residual

4    functional capacity ("RFC") to perform light work as defined in § 416.967(b), but with several

5    limitations:

> [Claimant can] never climb ladders, ropes or scaffolds.  On her right side she is limited in handling that is gross manipulation to frequent, she is right hand dominant.  The claimant has to avoid concentrated use of hazardous machinery and avoid concentrated exposure to unprotected heights.  The claimant's work will be limited to simple as defined in the Dictionary of Occupational Titles (DOT) Special Vocational Preparation (SVP) levels one and two, routine and repetitive tasks.  She needs to work in a low stress job defined as having only occasional decision-making required and only occasional changes in the work setting.  The claimant can have occasional interaction with the general public.  Work can be around co-workers throughout the day, but with only occasional interaction with co-workers.  The claimant has to avoid exposure to irritants such as fumes, odors, dust, and gases, and avoid concentrated exposure to poorly ventilated areas.

14   AR 22.  Based on this determination, the ALJ found that Plaintiff was unable to perform any past

15   relevant work.  AR 27; *see* 20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, the ALJ

16   determined that there were jobs that exist in significant numbers in the national economy that

17   Plaintiff could perform: electronics worker, garment sorter, and packager.  AR 28; *see* 20 C.F.R.

18   § 416.920(a)(4)(v).  The Appeals Council denied Plaintiff's request for review on April 4, 2022.

19   AR 1.  Plaintiff timely filed this action seeking judicial review of the Commissioner's decision.

20   ECF No. 1.

21   **II.    JURISDICTION**

22   The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

23   U.S.C. § 405(g).

24   **III.   LEGAL STANDARD**

25   "The Court may set aside a denial of benefits only if not supported by substantial evidence

26   in the record or if it is based on legal error." *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1084–

27   85 (9th Cir 2000).  Substantial evidence "means only . . . 'such relevant evidence as a reasonable

28   mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148,

3

1154 (2019) (quoting *Consolidated Edison Co v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "review[s] the administrative record in its entire[ty] to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Id.* at 1258.  The ALJ is responsible for determinations of credibility, resolution of conflicts in medical testimony, and resolution of all other ambiguities.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Additionally, courts "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).  "'Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in (1) discrediting Plaintiff's statements concerning the severity of her symptoms, (2) assessing the persuasiveness of medical opinion evidence, (3) assessing whether Plaintiff met a listing at step three, and (4) assessing Plaintiff's residual functional capacity at step four.

### A. Plaintiff's Subjective Symptoms

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms she alleges.  *See Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014–15

(9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1018 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  Additionally, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id*. at 1011.  "[G]eneral findings are an insufficient basis to support an adverse credibility determination."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id*.  The ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily reject Plaintiff's subjective testimony regarding pain or other symptoms. *Bunnell*, 947 F.2d at 345–46.

The ALJ discredited Plaintiff's statements as to the severity of her symptoms at steps three and four on the basis of Plaintiff's daily activities.  At step three, the ALJ relied on her characterizations of a function report submitted by Plaintiff and a third-party function report submitted by Terri Brown—Plaintiff's case manager at the women's shelter.  As to the function report, the ALJ repeatedly wrote that Plaintiff "prepared her own meals, performed household chores, used public transportation, shopped in stores, and handled her own finances" *E.g.*, AR 21. The ALJ further noted Plaintiff's purported "ability to live independently, drive, shop, take out the trash, do laundry, clean, and prepare simple meals." AR 19.  As to the third-party function report, the ALJ wrote that Plaintiff "prepared her own meals, performed household chores, used public transportation, and shopped in stores." AR 19–20.  At step four, the ALJ found that Plaintiff's health conditions could reasonably be expected to produce Plaintiff's pain and other symptoms, but that Plaintiff's statements as to the intensity, persistence, and limiting effects of these symptoms were not consistent with medical evidence and other evidence in the record.  As to other evidence, the ALJ relied on the function report and again wrote that Plaintiff "prepared her own meals, performed household chores, used public transportation, and shopped in stores." AR 23.

The ALJ erred in three ways.  First the ALJ mischaracterized the contents of the reports on

5

1   which she relied. As to the function report, Plaintiff actually wrote,

> I avoid being out in public, using public transportation, and being near crowds. . . . Some days I don't get out of bed. I won't eat or shower . . . . I rarely prepare meals. I usually eat my meals at the shelter. . . . I . . . sweep[], clean[] & dust[] . . . [a]bout 1 hour two times a week. . . . I no longer go out, unless for appointments.

AR 335–37. The contents of the report do not at all substantiate the ALJ's characterization of it. In addition, the third-party function report contains no indication that Plaintiff engages in any of the activities noted by the ALJ. *See* AR 347–54. An ALJ necessarily fails to provide clear and convincing reasons for rejecting a claimant's testimony when those reasons rest on mischaracterizations of the record. *Katherine M. v. Kijakazi*, No. 21-cv-01207-JST, 2022 WL 19975282, at *8 (N.D. Cal. Nov. 23, 2022); *see Garrison*, 759 F.3d at 1016; *Jones v. Kijakazi*, No. 21-16950, 2022 WL 4285597, at *1–2 (9th Cir. 2022) (holding that an ALJ failed to provide clear and convincing reasons where the ALJ "mischaracterized the contents of a function report . . . and a psychological evaluation"); *Smith v. Berryhill*, No. 18-cv-00887-VKD, 2019 WL 4848165, at *21 (N.D. Cal. Sept. 30, 2019) ("[T]o the extent the ALJ relied on [claimant's] activities of daily living as a reason to discount her credibility as to the intensity, persistence, and limiting effects of his condition, that reliance was not supported by clear and convincing reasons.").

Second, the ALJ ignored other evidence in the record that contradicted her characterizations. Plaintiff had panic attacks while attempting to use public transportation, *e.g.*, AR 523, 716, and regularly needed a counselor to accompany her to purchase groceries, *e.g.*, AR 1343–44, 1352–53, 1391, 1396, 1403, obtain diapers for her daughter, AR 1396, retrieve her mail, *e.g.*, AR 1396 & 1420, and complete housing paperwork, *e.g.*, AR 1405 & 1475, because her anxiety prevented her from doing so independently. The ALJ erred by ignoring this evidence in assessing Plaintiff's activities of daily living. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) ("To engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis.")

Third, even assuming that the ALJ properly characterized the record, the ALJ erred in finding these activities are inconsistent with the symptom-related impairments that Plaintiff described in her testimony. The Ninth Circuit "ha[s] repeatedly warned that ALJs must be

6

especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than resting in bed all day." *Garrison*, 759 F.3d at 1016; *accord Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[O]nly if [her] level of activity were inconsistent with [her] claimed limitations would these activities have any bearing on [her] credibility."). Daily activities are only grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ did not indicate which, if any, of Plaintiff's daily activities is transferrable to a work setting, nor does the record substantiate a conclusion that Plaintiff spends a substantial part of her day engaged in these activities.

### B.     Medical Opinion Evidence

New regulations concerning the agency's evaluation of medical evidence apply because Plaintiff filed her application after March 27, 2017. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). "Under the revised regulations, 'there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa.'" *Id.* at 791 (alterations in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017)). Rather, the agency considers a set of five factors when considering medical opinions. *See* 20 C.F.R. § 404.1520c(c). "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The agency may also consider a medical source's relationship with the claimant, the extent of a medical source's specialization, or other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(3)–

7

(5). The agency is required to "explain how it considered the supportability factors for a medical source's medical opinions" and "may, but [is] not required to, explain how [it] considered the [other three factors]." *Id.* § 404.1520c(b)(2).

### 1. State Agency Consultants

At step four, the ALJ found persuasive the opinions of state agency psychological consultants Brady Dalton, Psy.D., and Karen Ying, M.D. AR 26. Each consultant provided an opinion. *See* AR 72–73, 87–88. The ALJ wrote,

> The opinion was supported with facts pertaining to the claimant's mental impairments and symptoms cited within the assessment. In addition, the opinion was consistent with the medical record. Specifically, the claimant often had normal mental status findings throughout the medical records.

AR 26. The ALJ erred two ways. First, there are two opinions, but the ALJ only refers to one in addressing supportability and consistency. The ALJ thus failed to conduct the requisite analysis for one of the opinions—and the Court cannot tell which of the opinions was relied upon and which ignored.

Second, the ALJ's consistency analysis rests on a selective citation of the record. Much of the evidence cited by the ALJ are medical records of visits concerning issues of physical health that make no mention of Plaintiff's "mental status" whatsoever. *See* AR 436 (emergency room visit concerning "vulvar pain"), AR 513 (same but regarding "right breast pain"), AR 548–49 (same but regarding "vomiting, upper abdominal pain, and chills"), AR 556–57 (same but regarding "bilateral flank pain, lower abdominal pain, and headache"), AR 565 (same but regarding "irregular menstruation"), AR 572 (same but regarding "[a]bscess of right thigh"), AR 940 (medical visit for bilateral de Quervain's tenosynovitis and neck pain).

In fact, almost all of the other evidence cited by the ALJ directly refutes the ALJ's conclusion. Such evidence does not relay "normal mental status findings," but rather evinces Plaintiff's mental health status findings that directly support a finding of disability. *See* AR 525 (emergency room visit for "hot flashes, diaphoresis dizziness and chest pressure while riding a bus" "most consistent with anxiety attack"); AR 575 (emergency room visit noting that Plaintiff was "very symptomatic with anxiety" and "may require hospitalization"), AR 713 (psychotherapy

8

visit noting Plaintiff's "[a]nxious" mood, that Plaintiff was "[a]nxious when walking on street," and that Plaintiff "still has anxiety [symptoms] in general"), AR 716 (psychotherapy visit noting Plaintiff had a "[p]anic attack on the bus, went to hospital and stayed for a few hours," "has severe anxiety [symptoms]," and presented with "[a]nxious" mood), AR 922 (psychological report noting that Plaintiff's "mood was depressed and anxious" and that her affect "was labile and congruent with her mood").

The ALJ cited only one instance in which Plaintiff presented with normal mood and affect, and it was during a ten-minute telephonic appointment where Plaintiff raised issues of "postpartum hair loss." AR 953. The ALJ otherwise ignored overwhelming evidence of instances in which Plaintiff presented with depression, anxiety, and panic symptomatic of her PTSD that substantially impeded her ability to function. *See* AR 542, 586, 716, 719, 733, 885–86, 903, 908, 1001, 1007, 1013, 1023, 1028, 1051, 1056, 1060, 1064, 1081, 1085, 1095, 1099, 1123, 1127, 1145–46, 1149, 1153, 1157, 1175, 1186, 1188, 1192, 1203, 1209, 1211, 1213, 1219, 1223, 1227, 1267, 1269, 1302, 1308, 1322, 1324–25, 1236, 1328–29, 1330–34, 1337–38, 1343–44, 1341–42, 1345–46, 1347–48, 1350–51, 1352–53, 1354–57, 1359–60, 1367–68, 1370–71, 1382–85, 1391, 1396, 1403, 1405–08, 1419–20, 1423–24, 1427–28, 1439, 1440–41 , 1446, 1448–49, 1453, 1459, 1461–62 , 1463, 1480, 1484, 1488, 1493, 1495, 1497, 1505, 1510, 1515, 1517, 1528, 1531, 1534–35, 1537, 1546, 1550–52, 1554–56.

The ALJ was required to address "the extent to which [the state agency consultants'] medical opinion[s] [are] 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). Instead, the ALJ relied on the evidence that the ALJ mistakenly believed was consistent with the consultants' opinions while disregarding the evidence that was inconsistent with those opinions. The Ninth Circuit has emphasized that an "ALJ [i]s not permitted to 'cherry pick' from . . . mixed results to support a denial of benefits." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *accord Kilpatrick*, 35 F.4th at 1193. But that is what the ALJ did here. The ALJ thus erred in evaluating the persuasiveness of the opinions of the state agency consultants.

9

### 2. David Jarmon, PhD

At Plaintiff's hearing on remand, the ALJ solicited the testimony of medical expert David Jarmon, PhD. *See* AR 40–41. Dr. Jarmon testified that Plaintiff met listing 12.15 at 20 C.F.R. pt. 404, subpt. P, app. 1 for trauma- and stressor-related disorders. *Id.* The ALJ found Dr. Jarmon's testimony unpersuasive for two reasons. First, the ALJ found the opinion to be inconsistent with the medical record. AR 26. However, the ALJ relied on the same selective citation of the medical record discussed above to substantiate that conclusion, which was error. *See Woods*, 32 F.4th at 792; *Attmore*, 827 F.3d at 877. Second, the ALJ "agree[d] that [Plaintiff] has PTSD" but found that Plaintiff "stopped working due to safety concerns not her mental state." AR 26. This finding is not supported by substantial evidence. While it is true that Plaintiff incurred PTSD at a younger age prior to the physical attack, *e.g.*, AR 57, 477, 885–86, the record is nonetheless replete with evidence that the attack significantly exacerbated Plaintiff's PTSD, *e.g.*, AR 57, 350, 885–86, 925–26, 1497. The premise that Plaintiff did not incur trauma that worsened her PTSD as a consequence of an attack of such severity bears no support in the record and is at odds with common sense. Rather, Plaintiff's alleged onset date of July 21, 2015—one day after the attack— is consistent with the notion that the attack exacerbated Plaintiff's PTSD to the point that she was no longer able to work. In any event, the ALJ erred in finding Dr. Jarmon's opinion unpersuasive on these grounds.

### 3. Laura Catlin, PsyD

Plaintiff submitted the report of Dr. Laura Catlin, PsyD, who conducted an in-person examination of Plaintiff. *See* AR 919–28. Dr. Catlin concluded that Plaintiff has marked impairments in her abilities to "understand and remember detailed instruction[s]," "carry out detailed instructions," "work in coordination with or [in] proximity to others without being unduly distracted," "complete a normal workday and workweek without interruptions from psychologically based symptoms," "maintain an adequate pace and persistence while performing complex/detailed tasks," "withstand[] the stress of a routine workday," and "interact[] appropriately with co-workers, supervisors, and public on a regular basis." AR 927–28. Dr. Catlin also concluded that Plaintiff has moderate impairments in her abilities to "understand and

10

remember short and simple work-like procedures," "carry out short and simple instructions," "maintain adequate pace and persistence to perform simple tasks," "maintain[] her attention for a two hour segment," "perform at a consistent pace without unreasonable number and length of rest periods," "interact[] appropriately with the general public," "adapt[] to changes in job routine," "accept[] instruction and respond[] appropriately to criticism from supervisors," "get[] along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," "travel[] to unfamiliar places," and "us[e] public transportation." *Id.* Dr. Catlin further concluded that Plaintiff overall "has marked impairment performing in the workplace," AR 927, and that Plaintiff's "impairments will cause her to be absent from work more than four days a month," AR 928.

The ALJ found Dr. Catlin's report unpersuasive because the report was inconsistent with (1) the medical record and (2) Plaintiff's activities, namely, that Plaintiff "was able to take care of child, attend prenatal, go on public transportation, and there are no records that she required hospitalization." AR 26. The ALJ's first conclusion is erroneous because the ALJ relied on the same selective citation of the medical record, as discussed above. *See Woods*, 32 F.4th at 792; *Attmore*, 827 F.3d at 877. The ALJ's second conclusion is erroneous because the ALJ mischaracterized the evidence on which she relied while ignoring significant probative evidence, as also discussed above. *See Garrison*, 759 F.3d at 1016; *Kilpatrick*, 35 F.4th at 1193. Accordingly, the ALJ erred in finding Dr. Catlin's opinion to be unpersuasive on these grounds.

### C. Step Three

At step three, the ALJ determines whether the claimant has an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpart P, Appendix 1." *Ma v. Colvin*, No. 13-cv-05196-JST, 2014 WL 7184455, at *2 (N.D. Cal. Dec. 16, 2014). Plaintiff "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "To equal a listed impairment, [Plaintiff] must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a

claimant's impairment is not listed, then to the listed impairment ['closely analogous' to] the claimant's impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, an ALJ is not required, "as a matter of law, to state why [Plaintiff] failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). When the "Court simply cannot determine from the ALJ's opinion how he came to the conclusion that [Plaintiff's] 'severe' impairments did not equal" the listing, the "ALJ's recitation of the evidence does not provide an adequate foundation for his findings" that the listing was not met. *Santiago v. Barnhart*, 278 F. Supp. 2d. 1049, 1058 (N.D. Cal. 2003).

Plaintiff argues that the ALJ erred in assessing the severity of her mental health conditions in concluding that Plaintiff did not meet a listing. The Court agrees for the reasons discussed above. That is, the ALJ mischaracterized the evidence on which she relied and otherwise selectively cited the record to portray Plaintiff's conditions as less severe than the record actually shows them to be. Additionally, on the basis of this portrayal, the ALJ discounted Dr. Jarmon's testimony and Dr. Catlin's report. Because the ALJ improperly discredited the testimony and report, and because the ALJ ignored ample evidence as to the severity of Plaintiff's mental health conditions, the ALJ necessarily failed to "use all of the relevant medical and non-medical evidence in [Plaintiff's] case record to evaluate [her] mental disorder[s]." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(3)(a); *see Kilpatrick*, 35 F.4th at 1193; *T.J. v. Saul*, No. 19-cv-06516-LB, 2020 WL 7664464 at *23 (N.D. Cal. Dec. 21, 2020) ("[T]he ALJ misweighed the medical opinion[s]. This affects the step-three determination. The ALJ thus erred here too.").

### D.     Step Four

Plaintiff argues that the ALJ failed to properly assess Plaintiff's limitations in articulating her RFC at step four. Specifically, Plaintiff argues that the ALJ failed to properly assess the severity of her mental health conditions and her bilateral de Quervain's tenosynovitis. As to the

1  mental health conditions, the Court agrees for the reasons discussed above.

2      As to Plaintiff's bilateral de Quervain's tenosynovitis, the Court also agrees. The ALJ

3  emphasized that Plaintiff exhibited "mild improvement with treatment." AR 25. The physical

4  therapy notes on which the ALJ relied indicate mild improvement in Plaintiff's condition with

5  thumb spica braces, *see* AR 911, but other notes indicate that the braces later caused Plaintiff more

6  pain in her wrists, AR 915. The ALJ ignored other evidence in the record demonstrating that any

7  improvements in Plaintiff's condition were fleeting at best, that treatment through lidocaine

8  injections was ineffective, *compare* AR 940 *with* AR 1462, and that Plaintiff continued to

9  experience significant pain in her wrists, AR 1038, 1089, 1137, 1145, 1167, 1175, 1239, 1461–

10  62, 1487, 1503. The ALJ also ignored that this pain was of a severity that prompted Plaintiff to

11  visit to the emergency room, AR 1167, caused Plaintiff to cancel in-person appointments, AR

12  1503 & 1510, and made it difficult for Plaintiff to hold her baby daughter, AR 1487. The ALJ's

13  conclusion that Plaintiff "is limited" only on "her right side . . . in handling that is gross

14  manipulation to frequent" is both unsupported by substantial evidence and predicated on legal

15  error. AR 22. And "[b]ecause the RFC determination that serves as the basis of the step five

16  finding rests on error, so too do the ALJ's questions [to the vocational expert] and corresponding

17  findings at step five." *Katherine M.*, 2022 WL 19975282, at *10.

### E. Remedy

Where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (quotation marks omitted). The Court may only remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," *id.* at 1020, which necessarily means that "there are no outstanding issues that must be resolved before a determination of disability can be made," *id.* at 1020 n.26.

The requirements for remand for an award of benefits are met in this case. As to the first

requirement, the record is fully developed as necessary to render a determination of whether Plaintiff meets a listing at step three, which is dispositive in this case. As to the second requirement, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's statements concerning the severity of her symptoms, as well as the opinions of Dr. Jarmon and Dr. Catlin.

As to the third requirement, the ALJ would be required to find at step three Plaintiff meets a listing and is disabled per se. To meet any listing, Plaintiff must satisfy the requirements of paragraphs A and B for any listing or, alternatively, the requirements of paragraphs A and C for listings 12.02, 12.03, 12.04, 12.06, and 12.15. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2). Paragraph A of each listing includes medical indicia that must be present in a claimant's medical evidence. *Id.* § 12.00(A)(2)(a). Paragraph B provides functional criteria to evaluate how mental health conditions limit Plaintiff's functioning, including "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." *Id.* § 12.00(A)(2)(b). To satisfy paragraph B, Plaintiff's mental health condition "must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas." *Id.* Paragraph C provides criteria to evaluate serious and persistent mental disorders. *Id.* § 12.00(A)(2)(c). To satisfy paragraph C, Plaintiff's mental health condition must be "serious and persistent," *i.e.*, "there must be a medically documented history of the existence of the disorder over a period of at least two years, and evidence that satisfies the criteria in both C1 and C2." *Id.* § 12.00(G)(2)(a). C1 is satisfied if Plaintiff relies, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs" of a mental health condition. *Id.* § 12.00(G)(2)(b). C2 is satisfied if Plaintiff "ha[s] achieved only marginal adjustment" "despite [the claimant's] symptoms and signs." *Id.* § 12.00(G)(2)(c).

The record establishes that Plaintiff satisfies, at minimum, listing 12.15 for trauma- and stressor-related disorders due to her PTSD. Plaintiff need only satisfy either a combination of the paragraph A and B criteria or the paragraph B and C criteria, but it is clear that Plaintiff satisfies both combinations. Paragraph A of listing 12.15 provides,

14

> These disorders are characterized by experiencing or witnessing a traumatic or stressful event, or learning of a traumatic event occurring to a close family member or close friend, and the psychological aftermath of clinically significant effects on functioning. Symptoms and signs may include, but are not limited to, distressing memories, dreams, and flashbacks related to the trauma or stressor; avoidant behavior; diminished interest or participation in significant activities; persistent negative emotional states (for example, fear, anger) or persistent inability to experience positive emotions (for example, satisfaction, affection); anxiety; irritability; aggression; exaggerated startle response; difficulty concentrating; and sleep disturbance.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.15(a). As discussed above, the record contains ample evidence of these events and symptoms. *See* AR 57, 477, 350, 542, 586, 716, 719, 733, 885–86, 903, 908, 925–28, 1001, 1007, 1013, 1023, 1028, 1051, 1056, 1060, 1064, 1081, 1085, 1095, 1099, 1123, 1127, 1145–46, 1149, 1153, 1157, 1175, 1186, 1188, 1192, 1203, 1209, 1211, 1213, 1219, 1223, 1227, 1267, 1269, 1302, 1308, 1322, 1324–25, 1236, 1328–29, 1330–34, 1337–38, 1343–44, 1341–42, 1345–46, 1347–48, 1350–51, 1352–53, 1354–57, 1359–60, 1367–68, 1370–71, 1382–85, 1391, 1396, 1403, 1405–08, 1419–20, 1423–24, 1427–28, 1439, 1440–41 , 1446, 1448–49, 1453, 1459, 1461–62 , 1463, 1480, 1484, 1488, 1493, 1495, 1497, 1505, 1510, 1515, 1517, 1528, 1531, 1534–35, 1537, 1546, 1550–52, 1554–56. As to paragraph B, consistent with the improperly discounted medical opinions and related evidence cited above, the record establishes that Plaintiff has at least marked limitations in her abilities to interact with others and her ability to adapt or manage herself. As to paragraph C, this evidence also establishes that Plaintiff's PTSD has persisted at its current severity since at least July 20, 2015. As to the C1 and C2 criteria, Plaintiff has consistently relied upon treatment, psychotherapy, and counseling that have attained minimal lasting results, if any. In short, the record leaves the Court with "no serious doubt as to whether [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21. Accordingly, remand for an immediate calculation and payment of benefits is appropriate.

/ / /

/ / /

/ / /

/ / /

15

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. The Court hereby remands this case for an immediate calculation and payment of benefits.

**IT IS SO ORDERED.**

Dated:  June 20, 2023

_____
JON S. TIGAR
United States District Judge